UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lamont Tarrence McGee,

    Plaintiff,

v.

Robert Feneis, Mark Uner and Steven McCarty,

    Defendants.

Civil No. 07-4868 (PJS/FLN)

**REPORT AND RECOMMENDATION**

---

Lamont Tarrence McGee, *pro se*, for Plaintiff.
Margaret E. Jacot for Defendants.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss And For Summary Judgment [#66]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendants' Motion to Dismiss And For Summary Judgment [#66] be **GRANTED**.

## I. FINDINGS OF FACT

The events giving rise to this lawsuit occurred at the Minnesota Correctional Facility at Rush City ("MCF-RC"), where Plaintiff Lamont Tarrence McGee has been serving a 117-month sentence as a resident inmate since July 25, 2007. (Hudson Aff. Ex. A.) Defendants are Department of Corrections employees at MCF-RC. (Compl. Part III.) On August 20, 2007, Defendant Steven McCarty of MCF-RC's Office of Special Investigations ("OSI") was told by a government informant that McGee had received drugs from a visitor during an August 18, 2007 visit. (McCarty Aff. ¶ 2.) After monitoring McGee's phone calls, McCarty believed that the

same visitor, Melissa Selliger, planned to return on August 23, 2007 with more drugs. *Id.* In addition to videotaping the visit via multiple hidden cameras, McCarty personally observed Selliger's visit with McGee. *Id.* at ¶ 3, Ex. B (video footage). While sitting in the visitor area with McGee, Selliger took an object out of her sock, placed it under the clip of a clipboard, and handed the clipboard to McGee. *Id.* McCarty saw McGee remove the object from the clipboard and place it into his mouth. *Id.* at ¶ 3. At that point, McCarty alerted MCF-RC security to recover the object McGee had placed in his mouth, but the object was no longer there. *Id.* at Exs. A, B. Officers took McGee into the "shakedown room," where he was strip-searched. (McCarty Aff. Ex. A; Compl. ¶ 1.) McGee was then taken to a segregation housing unit, where he was searched again and provided a urine sample. (Compl. ¶ 1.) The urine sample was negative. *Id.* Next, he was taken to Fairview Hospital in Wyoming, Minnesota, where he was diagnosed with possible ingestion of THC, the narcotic chemical found in marijuana. (Hudson Aff. Ex. D.) Hospital staff conducted an x-ray and a urinalysis. (Compl. ¶ 1; Hudson Aff. Ex. D.) The x-ray was inconclusive and the urinalysis was negative. *Id.* McGee was given 50 grams of activated charcoal to increase the speed of his digestive system (Hudson Aff. Ex. D), and was taken back to the MCF-RC facility and placed on "dry cell" status "until the contraband could be recovered, until McGee tested positive for drugs, or until enough time had passed that we could be sure the contraband was no longer in his system." (McCarty Aff. ¶ 4.) Department of Corrections policy provides that an inmate suspected of ingesting contraband may be placed in a dry cell so that the results of the inmate's urination and defecation can be examined for contraband before the inmate flushes the toilet. (Darling Aff. ¶ 2, Ex. B.)

The day after McGee was put on dry cell status, August 24, 2007, McCarty attempted to

interview McGee after reading him his Miranda rights. (McCarty Aff. ¶ 4; Compl. ¶ 3.) McGee refused to talk and alleges he asked for a lawyer, but was not allowed legal representation. (Compl. ¶ 3.) McGee was told by staff that inmates do not have the right to an attorney for internal prison discipline hearings. *Id.*

McGee's cell was under video surveillance, and when MCF-RC staff reviewed the footage from August 24, 2007 and August 27, 2007, the video showed two instances where McGee looked out the window of his door after defecating, removed an item from his feces, and placed the item in his mouth. (Sass Aff. Exs. D,E.) In response to what appeared to be McGee reingesting contraband, a locked cover was placed over his toilet, and McGee was instructed to notify staff when he needed to defecate or urinate. (Darling Aff. ¶ 4.) On September 5, 2007, McGee's urine tested positive for the narcotic found in marijuana, THC, in two tests. (Sass Aff. Exs. G, H.) On September 6, 2007, McGee was charged with violating offender discipline regulations by attempting to smuggle contraband into the facility. (Sass Aff. ¶ 5, Ex. H.) McGee pled guilty to minor violations and was sentenced to time in segregation, suspended phone and visiting privileges for a year, and an increased custody classification. (Compl. ¶ 3; Sass Aff. Ex. H; McCarty Aff. ¶ 7.)

McCarty submitted a report to the DOC in-house counsel regarding the investigation of McGee's alleged drug smuggling, and was told to deliver relevant materials to the Chisago County Attorney's office for potential prosecution. (McCarty Aff. ¶ 6.) McCarty submitted the materials in October 2007, and the county attorney later made the decision to prosecute McGee. *Id.* McGee received charge papers from Chisago County dated November 15, 2007, charging him with the felony of bringing contraband into a prison in violation of Minn. Stat. § 243.55,

subd. 1. (Compl. ¶ 5; Hudson Aff. Ex. B.) McGee pled guilty on June 30, 2008 and was sentenced on November 19, 2008. (Hudson Aff. Ex. B.)

## II. STANDARD OF REVIEW

### A. Judgment on the Pleadings Standard

Defendants have moved for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A defense of failure to state a claim may be raised in such a motion pursuant to Federal Rule of Civil Procedure 12(h). Fed. R. Civ. P. 12(h)(2)(b). On a motion for judgment on the pleadings asserting the defense of failure to state a claim, a court applies the same standard as it would in a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. *See St. Paul Ramsey County Med. Ctr. v. Pennington County, S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988). The court is to accept as true all of the facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party. *See United States v. Any and All Radio Station Transmission Equip.,* 207 F.3d 458, 462 (8th Cir. 2000). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). When considering a motion for judgment on the pleadings, a court should generally ignore materials outside the pleadings, but it may consider materials that are part of the public record. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

### B. Summary Judgment Standard

Defendants also move for partial summary judgment. According to Federal Rule of Civil

4

Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a

proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

### III. LEGAL ANALYSIS

#### A. Plaintiff Has Sued Defendants In Their Official Capacities[1]

When a plaintiff's complaint does not specifically state the capacity in which a defendant government official is sued, the Eighth Circuit interprets the complaint as including only official capacity claims. In *Nix v. Norman*, 879 F.2d 429 (8th Cir.1989), the Eighth Circuit held that a plaintiff who wishes to sue a state official in her personal capacity under § 1983 must specifically state in the complaint that plaintiff intends to sue that official in her personal capacity. *Id.* at 431. If a plaintiff's complaint is silent as to the capacity in which she is suing the defendant, courts interpret the complaint as including only official-capacity claims. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995). The rationale behind this rule is that suits against state officials in their personal capacities exposes these officials to personal liability, and therefore language specifically stating this intent must be required to promptly notify these defendants of their potential liability. *Nix*, 879 F.2d at 431("section 1983 litigants wishing to sue government agents in both capacities should simply use the following language: "Plaintiff sues each and all defendants in both their individual and official capacities."). The Court in *Murphy v. State of Arkansas*, 127 F.3d 750 (1997) made it clear that the personal capacity pleading requirement is to be strictly enforced. *Id.* at 754-55. In *Murphy*, the Court stated that strict

---

[1] Even if, under the liberal pleading standard for *pro se* litigants, Plaintiff intended to sue Defendants in their personal capacity (for either damages or equitable relief,) Defendants are entitled to summary judgment on those claims, as discussed below. *Haines v. Kerner*, 404 U.S. 519, 595-96 (1972); *Stringer v. St. James R-1 School Dist.*, 446 F.3d 799, 802 (8th Cir. 2006).

6

enforcement is required because the Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees. *Id.* at 755 (citing *Nix*, 879 F.2d at 431) ("Although other circuits have adopted a more lenient pleading rule, we believe that our rule is more consistent with the Supreme Court's Eleventh Amendment jurisprudence.").

Here, Plaintiff's Complaint simply sets forth the names of the three Defendants and is silent as to official versus personal capacities. (Compl. Caption, Part III.) Therefore, under the rule of *Murphy, Egerdahl* and *Nix*, the Court must interpret the Complaint as making claims against Defendants solely in their official capacities.

### B. Plaintiff's Claims Against Defendants In Their Official Capacity for Damages and Retroactive Equitable Relief are Barred By the Eleventh Amendment

Plaintiff's claims for damages and equitable relief arise under 42 U.S.C. § 1983. (Compl. Parts IV-V.) 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. It is well-settled law that suits for damages against state officials in their official capacity are barred by the Eleventh Amendment absent consent or Congressional enactment to the contrary. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)(suits against state official in official capacity is not suit against the official but rather a suit against official's office, which is no different than a suit against the State itself); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456

(1976)(Congressional enactment exception). Here, Plaintiff has sued Defendants Feneis, Uner, and McCarty, in their respective official capacities, for damages amounting to $300,000. (Compl. Part V.) Thus, Plaintiff's $300,000 damages claim against Defendants in their official capacities must be dismissed for lack of jurisdiction as it is barred by the Eleventh Amendment.

Suits for *retroactive* equitable relief against state officials in their official capacity are also barred by the Eleventh Amendment, although a long-standing exception exists for suits for *prospective* equitable relief. *See Will*, 491 U.S. at 71 (citing *Kentucky v. Graham*, 473 U.S. at 167 n. 14 ("official-capacity actions for prospective relief are not treated as actions against the State"). Under the so-called *Ex parte Young* exception to Eleventh Amendment immunity, established to preserve the constitutional structure established by the U.S. Constitution's Supremacy Clause,[2] state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Missouri Child Care Assoc. v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123, 149-50 (1908)); *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002) ("the proper focus must be directed at whether the injunctive relief sought is prospective or retroactive in nature"); *see also McCartney ex rel. McCartney v. Cansler*, 608 F.Supp.2d 694, 700-01 (E.D.N.C. 2009) (ongoing and prospective relief requirement). The *Ex Parte Young* line of cases makes it clear that the

---

[2] The theory of *Ex parte* Young is that an unconstitutional statute is void, and therefore does not impart to the state official any immunity from responsibility to the supreme authority of the United States. *Green v. Mansour*, 474 U.S. 64, 68 (1985)(citing *Ex parte Young*, 209 U.S. at 160.) "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of federal law." *Id.*; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,102-03 (1984).

Eleventh Amendment exception applies only to prospective injunctive relief to prevent a continuing violation of federal law. *Mansour*, 474 U.S. at 68. The Supreme Court has expressly held that the *Ex parte Young* exception does not apply to retroactive or retrospective equitable relief, and that therefore retroactive claims against state officials in their official capacity are barred. *Id.* (citing *Ex parte Young*, 209 U.S. at 160).

Here, Plaintiff asks for retroactive equitable relief when he asks for his drug possession and smuggling violation to be expunged. (Compl. Part V.) Black's Law Dictionary defines retroactive as "extending in scope or effect to matters that have occurred in the past." *Black's Law Dictionary* (8th ed. 2004). An expungement is retroactive injunctive relief because it does not prevent a continuing or ongoing violation of federal law – it simply changes the effect of an event that happened in the past. *Mansour*, 474 U.S. at 68. Therefore, because Plaintiff's suit against Defendants is in their official capacities and does not fall into the *Ex parte Young* exception to Eleventh Amendment immunity, Plaintiff's equitable expungement claim is also barred.

### C. Even If Plaintiff's Complaint Was Against Defendants In Their Personal Capacities, Defendants Are Entitled To Summary Judgment Because Plaintiff Did Not Suffer A Constitutional Deprivation

Although Plaintiff's suit against Defendants is barred by the Eleventh Amendment because the suit must be interpreted as against Defendants in their official capacities, to the extent Plaintiff intended to sue Defendants in their personal capacities his claims would fail because Plaintiff did not suffer a constitutional deprivation. As shown below, Plaintiff has not brought forth sufficient facts to create a genuine issue for trial as to whether Defendants violated his constitutional rights under the First, Fifth, Sixth, and Eighth Amendments. Therefore, even if

9

Plaintiff properly sued Defendants in their personal capacities, Defendants would be entitled to summary judgment.

Defendants correctly argue that to the extent Plaintiff intended to seek damages and equitable relief against Defendants in their individual capacities, Defendants are protected by the doctrine of qualified immunity for state officials. *Beck v. Wilson*, 377 F.3d 884, 889 (8th Cir. 2004). The U.S. Supreme Court set forth a two-step inquiry for qualified immunity in *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Under step one of the *Saucier* analysis, if the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed. *Saucier*, 533 U.S. at 201; *see also Coleman v. Parkman*, 349 F.3d 534, 537-38 (8th Cir. 2003). If no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim, and the Court need not address the qualified immunity question in the second step. *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007); *see Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (Breyer, J., concurring) (distinguishing Saucier's step one as the "constitutional question," and step two as the "qualified immunity question.")

**1. Defendants are Entitled to Summary Judgment on Counts One, Two and Four Alleging Eighth Amendment Violations**

    i. *Count One – Excessive Force*

To prevail on a § 1983 action alleging that prison officials violated Eighth Amendment by using excessive force, an inmate has to prove that officers used physical force both maliciously and sadistically for the very purpose of causing harm. *Muhammad v. McCarrell*, 536 F.3d 934, 938 (8th Cir. 2008). Officials do not violate the Eighth Amendment if force was applied in a good-faith effort to maintain or restore discipline. *Howard v. Barnett*, 21 F.3d 868,

871 (8th Cir. 1994)(citing *Hudson v. McMillian*, 503 U.S. 1, 6-7,(1992)). Factors relevant to an excessive force inquiry include the threat the officials reasonably perceived, the need for the use of force, the efforts made to minimize the force used, the relationship between the need for using force and the amount of force used, and the degree of injury inflicted. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). It is important to note, however, that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (citing *Hudson*, 503 U.S. at 6-7)). "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* Serious or permanent injury is not required, but some actual injury must be shown, and the extent of the pain inflicted is considered *Id.*

In his Complaint, Plaintiff alleges he was strip-searched twice, taken to a hospital, provided two urine samples, had his stomach pumped and x-rayed, and drank an activated charcoal mix. (Compl. ¶ 1.) He also alleges that his urination and bowel movements were supervised and that prison staff watched him, cracked jokes, and made fun of him in front of other inmates. *Id.* Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has not provided allegations or submitted evidence that tends to show any of the Defendants used malicious and/or sadistic physical force against Plaintiff. Plaintiff has not even shown that Defendants used any physical force against him, let alone malicious and sadistic physical force with the intent of causing pain. Plaintiff has also not brought forth any facts to show that he was physically injured or that Defendants inflicted any pain upon him. Defendants, on the other hand, have brought forth evidence showing that to the extent they or other prison staff touched

11

Plaintiff in any way (e.g., during the strip searches or incident to Plaintiff's hospital visit), any physical touch was applied in a good faith effort to maintain or restore discipline. (McCarty Aff. ¶¶ 3-4.) Therefore, Plaintiff has not set forth any facts upon which a reasonable jury could find that Defendants used excessive force against him in violation of his constitutional rights. Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim.

### ii. Counts Two and Four – Conditions of Confinement

In Counts Two and Four of his Complaint, Plaintiff alleges that a variety of conditions of his confinement were unsanitary, inhumane, and constituted cruel and unusual punishment in violation of the Eighth Amendment. (Compl. ¶¶ 2, 4.) Prisons need not provide a comfortable environment for inmates, but "conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A claim for conditions of confinement in violation of the Eighth Amendment consists of two elements: 1) Plaintiff must show that, *as a result of a defendant's conduct*, he was deprived of the "minimal civilized measure of life's necessities"; and 2) Plaintiff must show that prison officials acted with "deliberate indifference" to his health or safety. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (emphasis added). As Plaintiff here fails to bring forth sufficient evidence to create a genuine issue of material fact as to the first element because Plaintiff fails to establish that any of the harms alleged were the result of Defendants' conduct, the Court need not reach the second element of a conditions of confinement claim. An inmate's deliberate and continued noncompliance with a valid prison rule does not convert the consequences that flow

12

automatically from that noncompliance into unconstitutional punishment under the Eighth Amendment. *Rodriguez v. Briley*, 403 F.3d 952, 952-53 (7th Cir. 2005) ("[Plaintiff] cannot, in short, be permitted to engineer an Eighth Amendment violation. The analogy is to civil contempt. A person who is imprisoned for refusing to sign a deed that he is legally obligated to sign, but who can get out of prison just by signing it, cannot complain that he is being punished.") Similarly, the harms Plaintiff has alleged here flow from his own actions in continued violation of valid prison rules – namely, smuggling drugs into prison by swallowing them in the first instance, being placed on dry cell status as a result, and then twice picking the drugs out of his feces and reingesting them – actions that kept him on dry cell status. (Sass Aff. ¶ 4, Exs. D, E (video footage).) More specifically, Plaintiff alleges he was deprived of the minimal civilized measure of life's necessities in violation of the Eighth Amendment on the following grounds: 1) deprivation of constant, unsupervised access to a toilet; 2) deprivation of clean clothing; 3) deprivation of access to a clean prison cell; 4) inadequate cold bag meals; and 5) deprivation of access to regular showers. Defendants have brought forth sufficient uncontradicted evidence showing that any "harms" Plaintiff alleges were a result of Plaintiff's actions, not Defendants' conduct.

First, Plaintiff was denied constant, unsupervised access to the toilet because he twice interfered with the execution of prison policies requiring an inmate suspected of ingesting contraband to be placed on dry cell status. Second, to the extent his clothes and sheets were not clean, any uncleanliness resulted from his attempts to hide a bowel movement so that he could reingest contraband. (Sass Aff. ¶ 4, Ex. E.) Further, Defendants present evidence that Plaintiff was given clean replacement gowns and blankets when he dirtied his garment or blankets.

(Darling Aff. ¶¶ 3-8.) Third, Plaintiff's prison cell only became dirty when he made a mess with his feces. (Darling Aff. ¶ 9.) Defendants have set forth evidence showing that Plaintiff's cell was cleaned while he was on dry cell status and that he was given cleaning supplies. (Darling Aff. ¶ 6.) Fourth, Plaintiff was provided nutritionally adequate cold bag meals because he had been assigned to dry cell segregation status. (Schultz Aff. ¶¶ 1-6 (citing DOC policy 301.083, entitled "Segregation Unit Management").) MCF-RC regulations provide for cold meals for offenders in segregation. *Id.* Fifth and last, Plaintiff has not alleged that Defendants' conduct caused a deprivation of access to showers, and even if he had, Plaintiff has not brought forth sufficient evidence to create a genuine issue of material fact as to whether he was not provided with the constitutional requirement of adequate personal hygiene. *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994); *see also Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988) (constitution requires inmates receive one shower per week). Plaintiff was showered three times during his two-week stay in the segregation unit. (Darling Aff. ¶ 8, Ex. H.)

The Court finds that Plaintiff's failure to set forth sufficient facts upon which a reasonable jury could find Defendants' conduct deprived him of the minimal civilized measure of life's necessities is a necessary bar to Plaintiff's § 1983 claim challenging his conditions of confinement as a violation of the Eighth Amendment. Thus, Defendants are entitled to summary judgment as to Counts Two and Four of the Complaint.[3]

---

[3] In Plaintiff's Memorandum In Opposition Of Defendants Motion for Summary Judgment, he restates the claims in his Complaint and refers to various additional harms not specifically pled in the Complaint. (Doc. No. 78.) Again, he fails to show how those harms flowed from Defendants conduct. *Id.* As with the deprivations properly alleged in his Complaint, the alleged harms mentioned in Plaintiff's memorandum not only flow from Plaintiff's deliberate and continued noncompliance with valid prison regulations, but also fail to rise to the level of an Eighth Amendment violation.

**2. Defendants are Entitled to Summary Judgment on Count Three Alleging A Sixth Amendment Violation**

Plaintiff alleges he was deprived of his constitutional right to counsel secured by the Sixth Amendment because he made a request for counsel during the internal prison investigation of his drug smuggling violation and his request was denied. (Compl. ¶ 3.) Prison inmates do not have a right to consult with or be represented by either retained or appointed counsel during a prison disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 314-15 (1976)(quoting *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974)). Prison disciplinary hearings are not part of a criminal prosecution, and the Sixth Amendment right to counsel does not attach until the initiation of formal criminal prosecution by way of formal charge, preliminary hearing, indictment, information or arraignment. *U.S. v. King,* 559 F.3d 810*,* 813-14 (8th Cir. 2009) (citing *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).[4] Plaintiff alleges he was denied counsel in violation of the Sixth Amendment on August 24, 2007. (McCarty Aff. ¶ 4.) On August 24, 2007, Defendant McCarty read Plaintiff his Miranda rights prior to an attempted interrogation. (Compl. ¶ 3.) Plaintiff alleges that he told McCarty that he had a lawyer and that he wanted to call that lawyer, but McCarty would not allow Plaintiff to reach the lawyer by phone or mail. (Compl. ¶ 3.) In a sworn affidavit, McCarty states that when he interviewed Plaintiff on August 24, 2007 McGee never asked for an attorney. (McCarty Aff. ¶ 4.) Additionally, Defendants submitted an audio recording of the interview in which McCarty can be heard reading Plaintiff his Miranda rights and then asking Plaintiff if he understands his Miranda rights. (Id. at Ex. C.) Next, McCarty can

---

[4] In addition, the requirement that a guilty plea be shown to be fully intelligent and voluntary does not apply to prison proceedings. *Bostic v. Carlson*, 884 F.2d 1267, 1274 (9th Cir. 1998).

be heard asking, "Do you want to talk to us now?" *Id.* Plaintiff simply responds, "No." *Id.* Plaintiff did not say anything else during the interview that can be heard on the audio recording, and cannot be heard asking to call a lawyer. *Id.* After Plaintiff said he did not want to speak, McCarty can be heard ending the interview. *Id.* Later, on September 6, 2007, Plaintiff admitted to minor prison violations and signed a waiver of his right to an internal prison disciplinary hearing. (Sass Aff. Ex. H.) In response to the evidence Defendants submit in support of their motion, Plaintiff has not set forth any facts upon which a reasonable jury could find he was denied his Sixth Amendment right to counsel. Although Plaintiff had a right to be represented by counsel during the prosecution of his criminal charge in Chisago County for smuggling contraband into a prison, that right did not attach until he was formally charged on November 15, 2007. (Hudson Aff. Ex. B.) Here, Plaintiff has sued only prison officials who bear no responsibility for providing Plaintiff with counsel in a criminal prosecution. Thus, Defendants are entitled to summary judgment on Count Three of the Complaint.[5]

### 3. Defendants Are Entitled To Summary Judgment On Count Five Because Plaintiff Was Not Deprived Of His First Amendment Protection Against Retaliation For Accessing The Court System

An inmate may bring a claim for retaliatory discipline if a prison official files a disciplinary charge or criminal charge in retaliation for the exercise of constitutionally protected rights, including the right to access the court system. *Sprouse v. Babcock*, 870 F.2d 450, 452

---

[5] Plaintiff's Complaint does not specifically allege a Fifth Amendment right to counsel violation, but if it did, the claim would fail because a plaintiff cannot maintain an action under § 1983 for violation of his Fifth Amendment rights unless compelled statements made without the benefit of counsel were used against him at a criminal trial. *Chavez v. Martinez*, 538 U.S. 760, 767 (2003). No criminal trial was held in Plaintiff's case, so his Fifth Amendment rights could not have been violated. (Hudson Aff. Ex. C.)

(8th Cir. 1989). However, claims of retaliation fail if the alleged retaliatory conduct discipline was issued for actual violation of a prison rule. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir.1990)). Thus, a defendant may successfully defend a retaliatory discipline claim by showing "some evidence" the inmate actually committed a rule violation. *Id.* (quoting *Goff v. Burton*, 7 F.3d 734, 738-39 (8th Cir.1993)). Plaintiff alleges that Defendants retaliated against him for filing the instant lawsuit by charging him with criminal violations in Chisago County court. (Compl. ¶ 5.) As discussed above, Defendants have brought forth ample evidence showing that Plaintiff was disciplined because he violated prison regulations by attempting to smuggle drugs into MCF-RC. Defendants submit both video an laboratory evidence. (McCarty Aff. Ex. B; Sass Aff. Exs. G, H.) In response to the evidence Defendants submit in support of their motion, Plaintiff has not set forth any facts upon which a reasonable jury could find Defendants retaliated against him in violation of his First Amendment rights. [6] Therefore, Defendants are entitled to summary judgment on Count Five of the Complaint.[7]

---

[6] The timing of events leading to the criminal charges against Plaintiff in Chisago County also weighs in Defendants' favor. Plaintiff was internally disciplined on September 6, 2007, but did not submit the first paperwork (*in forma pauperis* papers) for the instant case until November 13, 2007. (Compl. ¶ 5.) Although formal charges were filed against him by the Chisago County prosecutor on November 15, 2007, Defendants have submitted evidence showing that they were not involved in that prosecutorial decision. Defendants' evidence shows that all materials submitted by Defendants to Chisago County were submitted in October 2007, well before the charging decision. Thus, since Defendants' evidence shows their involvement in the Chisago County process ended in October 2007, and since Plaintiff has not brought forth sufficient evidence to create a genuine issue of material fact as to this sequence of events, Plaintiff's retaliation claim must fail.

[7] Although he makes no claim in the Complaint for denial of access to legal materials, Plaintiff alleges he was denied legal materials in his opposition brief. Even if properly alleged, Plaintiff cannot state a claim on these grounds because a prisoner cannot maintain an actionable

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** Defendants' Motion to Dismiss And For Summary Judgment [#66] be **GRANTED**.

DATED: August 18, 2009                     *s/ Franklin L. Noel*
                                            FRANKLIN L. NOEL
                                            United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 1, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.

---

claim for denial of access to the courts without showing some actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Plaintiff has not brought forth any evidence to show he was, for example, precluded from enforcing a legal right, missed a critical filing deadline, or that he was hindered in pursuing pending litigation. *Id.* at 351-54.